UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSVALDO RISCO,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br><br>          Defendant. | Case No.15-cv-03075 NC<br><br>**ORDER GRANTING IN PART, DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>Re: Dkt. Nos. 25-1, 27 |

Plaintiff Osvaldo Risco seeks judicial review of the Commissioner of Social Security's denial of his claim for disability benefits. Risco argues his claim for benefits was wrongfully denied because the Administrative Law Judge failed to properly consider his past relevant work, gave too little weight to the opinions of treating and examining medical sources, gave too much weight to the opinions of non-examining physicians, found him lacking credibility, failed to fully consider his exertional and non-exertional limitations, and improperly applied the Medical-Vocational Guidelines to his case.

The Court finds the ALJ improperly discounted the opinion of treating physician Chi Ling Lin. However, the Court finds no error in the weight the ALJ gave to the opinions of other medical sources. The Court finds the ALJ improperly failed to consider Risco's back pain and the potential side effects of his medications in making the residual functional capacity ("RFC") determination. The Court further finds the ALJ failed to

Case No. 15-cv-03075 NC

consider Risco's non-exertional non-severe impairments of hearing and vision loss at step five, but properly considered his obesity. The Court also finds that any error in considering Risco's past relevant work was harmless, and that the ALJ properly found Risco less than fully credible. Therefore, the Court GRANTS in part and DENIES in part the cross-motions for summary judgment and REMANDS for further proceedings consistent with this order.

## I.   BACKGROUND

### A.   The First Administrative Hearing And Appeals Council Decision

Risco first applied for Supplemental Security Income and Social Security Disability Insurance on February 26, 2010. AR 141. Risco listed an alleged onset date for his disability of June 1, 2002. AR 141. The SSA denied Risco benefits at the initial determination and reconsideration levels, and Risco subsequently requested a hearing held on March 1, 2012. AR 141. In a March 14, 2012 decision, ALJ Thomas J. Gaye found Risco not disabled because he could perform his past relevant work. AR 147.

Risco successfully appealed the ALJ's March 2012 decision to the SSA Appeals Council, which remanded the case to ALJ Gaye for further proceedings. AR 153-56. The Council found the ALJ needed to provide additional rationale for according little weight to a treating physician's and examining physician's opinions, and that he needed to identify the acceptable medical sources supporting the RFC determination. AR 154. The Council also directed the ALJ to further develop and evaluate the record regarding Risco's past relevant work. AR 154. Lastly, the Appeals Council found the ALJ did not properly consider Risco's subjective complaints and the side effects of his medications. AR 155.

### B.   The Second Administrative Hearing and Appeals Council Decision

The ALJ held a rehearing of Risco's case on July 31, 2013, once again finding Risco not disabled. AR 37, 40. In the decision, the ALJ found at step one that Risco had not engaged in substantial gainful activity since his alleged onset date, February 26, 2010. AR 42. At step two, the ALJ found Risco had the severe impairments of "degenerative disc disease of the lumbar spine and obesity." AR 42. The ALJ noted that the other

Case No.15-cv-03075 NC                2

conditions and injuries Risco received treatment for included hearing loss, kidney disease, a hernia, decreased right eye vision, and injuries resulting from a bicycle accident. AR 42-43. The ALJ found these conditions non-severe. AR 43.

Next, at step three, the ALJ found Risco's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the listings"). AR 43. Specifically, the ALJ found that "no acceptable medical source" or state examiner offered findings allowing the ALJ to conclude Risco met a listing. AR 43. In addition, the ALJ found that none of the subsequent evidence submitted altered his previous conclusion that Risco's impairments did not equal a listing. AR 43. Regarding Risco's obesity, the ALJ noted no listing existed for obesity, but that Social Security Regulation ("SSR") 02-1p required ALJs to consider obesity in deciding if a claimant's impairments were severe, if those impairments met or equaled a listing, and in determining a claimant's RFC. AR 43. The ALJ stated he considered obesity and its contribution to "additional or cumulative limitations" at the second through fifth steps of the disability evaluation. AR 43.

At step four, the ALJ found Risco could perform the full range of medium work, and that Risco was not fully credible. AR 44. When considering a claimant's symptoms, ALJs must follow a two-step analysis. AR 44. First, the ALJ must determine if there is an "underlying medically determinable physical or mental impairment(s)… that could reasonably be expected to produce the claimant's pain or other symptoms." AR 44. If the first step is met, the ALJ next evaluates "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." AR 44. ALJs must decide on the claimant's credibility based on the entire record. AR 44. Here, Risco alleged disability based on "back, neck, knee, and shoulder pain." AR 44. The ALJ found Risco's impairments "could reasonably be expected to cause the alleged symptoms," but that his statements as to the symptoms' "intensity, persistence and limiting effects" were "not entirely credible." AR 44. The ALJ later clarified that he found Risco credible as to his conditions, "but far less so when describing their severity." AR 46.

According to the ALJ, Risco's subjective complaints of back pain are only substantiated by abnormalities in his lumbar spine. AR 45. Specifically, the medical records showed a "narrowing" and "bulging" at the L5-6 lumbar vertebra, as well as mild spinal stenosis and moderate to severe left neural foraminal stenosis. AR 45. However, the ALJ found that since those findings, there was "no demonstrated objective finding of worsening," and the back condition was not permanently disabling. AR 45. The ALJ also considered that Risco did not receive physical therapy or do home exercises for his back pain. AR 45. Consequently, the ALJ found Risco's more recent complaints of worsening and more frequent symptoms unsupported because it appeared no clear cause existed for a worsening of those symptoms. AR 45. As for the alleged knee pain, the ALJ found no medical basis for noting an additional limitation to Risco's work abilities. AR 46. The ALJ found Risco testified to having "extremely severe symptoms" at the hearing, such as an inability to sit for more than 15 minutes and bend to tie shoelaces. AR 46. In addition, Risco testified his pain medication damaged his kidneys, and that his knee condition caused him to go to the hospital multiple times. AR 46. The ALJ found these reports undermined by the medical records and by a bicycle accident Risco suffered. AR 46.

The ALJ gave little weight to the opinion of Yen Jolly, a treating nurse practitioner. AR 46. Jolly opined on Risco's condition in a disability form, but the ALJ found her comments suggested she "merely" recited Risco's own complaints. AR 46. However, the ALJ accorded "considerable weight" to Jolly's treatment notes. AR 46. The ALJ also accorded little weight to the opinion in a disability form filled out by Dr. Chi Ling Lin, a treating physician. AR 47. That form stated Risco's condition would be disabling for more than one year. AR 47. The ALJ found these dates appeared "arbitrary," and the statement too "vague" because the doctor did not explain her conclusions or why Risco's condition would limit him for the period specified. AR 47. The ALJ also gave little weight to a January 2012 letter Dr. Lin submitted to the SSA stating Risco's back pain made him unable to perform jobs requiring "heavy lifting or prolonged standing, walking, or sitting." AR 47. The ALJ found Dr. Lin's statements "too vague and inconsistent with

Case No.15-cv-03075 NC          4

the sparse radiological findings and physical examination findings." AR 47. The ALJ accorded more weight to Dr. Lin's treatment notes. AR 47.

Risco underwent a consultative examination in August 2010. AR 47. Dr. Calvin Pon concluded Risco could perform "light work with additional postural and reaching limitations." AR 47. The ALJ noted Dr. Pon diagnosed Risco with "chronic, neck, left shoulder, low back, and bilateral knee pain." AR 47. The ALJ found Dr. Pon's opinion unpersuasive because Pon noted "possibilities" of numerous diagnoses that appeared only to come from Risco's "subjective complaints." AR 47. The ALJ accorded "the greatest weight" to Agency physicians, who found Risco capable of "light work." AR 47-48.

The ALJ found Risco capable of performing "medium work," stating he had "considered the additional documents submitted since the DDS analysis and the findings of degenerative changes particularly at the L5-L6 level noted on [the] MRI." AR 48. According to the ALJ, he accorded Risco's subjective complaints "all benefit of the doubt." AR 48. Finally, the ALJ found Risco able to perform his past relevant work as a bakery truck driver, but also made an alternative step five finding. AR 48. At step five, the ALJ considered Risco's age, education, work experience, and medium RFC determination to find Risco not disabled under grids 203.22 and 203.15. AR 49.

Risco once again appealed the ALJ's decision, but the Appeals Council denied Risco's request for review on March 30, 2015. AR 12. The Council denied the appeal because it found no reason to review the ALJ's decision. AR 12. Both parties consented to the jurisdiction of a magistrate judge. Dkt. Nos. 6, 9.

## II. LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as

Case No.15-cv-03075 NC                 5

adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance."). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.1995). An ALJ's decision will not be reversed for harmless error. *Burch*, 400 F.3d at 679; *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).

## III. DISCUSSION

### A. Though The ALJ Failed To Properly Identify Past Relevant Work, This Was Harmless Error Given The Alternative Finding At Step 5.

Risco argues the ALJ failed to identify his past relevant work in the Dictionary of Occupational Titles. Dkt. No. 25-2 at 10. In addition, Risco argues, even if his past relevant work were identified, the ALJ's opinion would not be supported by substantial evidence because the ALJ failed to fully question Risco about the demands of his work. *Id*. Colvin contends that at step four, the claimant bears the burden to prove he cannot perform past work. Dkt. No. 27 at 9. Further, Colvin argues Risco waived any objection to the vocational expert's testimony because he was represented at the hearing. *Id*. Lastly, as discussed below, Colvin contends that any error at step four would be considered harmless because the ALJ made an alternative finding at step five. *Id*.

At step four of the disability evaluation process, claimants must show they are no longer able to perform past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). A claimant must demonstrate an inability to perform such work either as generally or actually performed "in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). Though the claimant has the burden of proof at this step, the ALJ must "make the requisite factual findings to support his conclusion." *Id*. (internal quotation marks omitted). These findings consist of determining the claimant's RFC and the physical and mental demands of their past relevant work. *Pinto*, 249 F.3d at 844-45. An ALJ may use two sources of information to "define a claimant's past work as actually performed: (1) the claimant's own testimony, and (2) a properly completed vocational

report." *Lewis*, 281 F.3d at 1083.

Risco argues substantial evidence does not support the ALJ's finding that he could perform past relevant work because the vocational expert did not identify the job's code in the Dictionary of Occupational Titles and did not question him about the physical and mental demands of his job. Dkt. No. 25-2 at 10-11. Colvin rebuts that Risco had an attorney at the hearing, Cynthia Starkey, and she did not challenge the vocational expert's testimony, opting to simply question the expert about other issues. Dkt. No. 27 at 9. Typically, a claimant must raise issues at the administrative hearing to preserve them for appeal. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Here, Attorney Starkey represented Risco at both administrative hearings, but she never questioned the vocational expert about the exact DOT codes. *See* AR 115-16, 132. Nor did she object to a failure to develop the record as to the physical and mental demands of past work. *See* AR 101-17, 120-33. The Court finds Risco's step four argument waived. *Meanel*, 172 F.3d at 1115. Even if this argument was not waived, any error would be harmless because the ALJ made an alternative finding at step five of the disability evaluation. AR 48; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1042-43 (9th Cir. 2008) (finding that though ALJ's step four determination constitutes error, it was harmless given the alternative finding at step five).

**B. The ALJ Properly Rejected The Opinion Of Nurse Practitioner Jolly, Improperly Rejected The Opinion Of Dr. Lin, Properly Rejected The Opinion Of Dr. Pon, And Properly Gave Greatest Weight To The Opinions Of Non-Examining Physicians Wong And Ocrant.**

Next, Risco argues the ALJ's finding that he had the RFC to perform a full range of medium work is not supported by substantial evidence. Dkt. No. 25-2 at 11. Specifically, he objects to the ALJ granting the greatest weight to non-examining Agency physicians, allocating "little weight" to the opinions of treating medical sources, and rejecting Dr. Pon's opinion. *Id*. at 11-20. Colvin argues the ALJ did not err because the ALJ properly considered the conflicting sources in determining Risco's RFC. Dkt. No. 24 at 2.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041. Generally, more weight is given to the opinion

Case No.15-cv-03075 NC            7

of a treating physician than to that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Similarly, the opinion of an examining physician is entitled to more weight than that of a non-examining physician. *Id*.

Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). The Commissioner must provide "clear and convincing" reasons for rejecting the un-contradicted opinion of treating and examining physicians. *Lester*, 81 F.3d at 830. Where contradicted, the opinions of treating and examining physicians may only be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. The Ninth Circuit has found that "[o]ccasional symptom-free periods… are not inconsistent with disability." *Lester*, 81 F.3d at 833.

An ALJ can reject an un-contradicted treating physician's opinion, "by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An ALJ need not accept such an opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Id*. When rejecting a medical opinion, an ALJ must do more than state his or her conclusions; the ALJ must express his or her "interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Further, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language than fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

Conversely, a non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). However, a non-examining physician's opinion may constitute substantial evidence if the

Case No.15-cv-03075 NC               8

opinion is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. An ALJ may in part rely on non-examining physicians' statements to the extent independent evidence in the record supports those statements. *Morgan*, 169 F.3d at 602.

Lastly, the Code of Federal Regulations identifies nurse practitioners as an "other source" from which the SSA may obtain medical information. 20 C.F.R. § 404.1513(d). Nurse practitioners are not "acceptable medical sources," and ALJs may discount testimony from other sources if "the ALJ gives reasons germane to each witness for doing so." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

### 1. The ALJ Properly Discounted the Opinion of Nurse Practitioner Jolly.

Nurse practitioner Yen P. Jolly treated Risco starting on July 15, 2011. AR 519. In a November 29, 2011, doctor's certificate for state disability, Jolly diagnosed Risco with "worsening back pain." AR 519. She stated Risco "is unable to lift or bend or stoop. [Risco] states that he cannot return to work [at] this time." AR 519. As to treatment received, Jolly reported that Risco's pain was managed with Vicodin and that he was getting treatment "with good result." AR 519. Jolly stated she believed Risco would be able to return to work on February 15, 2012. AR 519. The ALJ accorded little weight to Jolly's statements because her comments in the certificate suggested she merely recited Risco's complaints. AR 46. Also, because Jolly limited her statements to a six-month period, her statements were insufficient to show disability under SSA guidelines. AR 46.

Because the ALJ gave a number of relevant reasons for not finding Jolly's opinion a credible basis for Risco's disability, the Court finds the ALJ gave "germane" reasons for discounting nurse practitioner Jolly's opinion in the doctor's certificate. *Ghanim*, 763 F.3d at 1161; 20 C.F.R. § 404.1513(d). Accordingly, the Court finds the ALJ did not err in rejecting Jolly's opinion.

### 2. The ALJ Improperly Rejected The Opinions of Treating Physician Chi Ling Lin.

Treating physician Chi Ling Lin started treating Risco on June 7, 2011. AR 524.

Case No.15-cv-03075 NC            9

Dr. Lin provided two opinion statements for Risco. On January 30, 2012, Dr. Lin wrote a letter stating Risco "has chronic low back pain for many years. He is currently unable to work at jobs that require heavy lifting or prolonged standing, walking or sitting because of his pain." AR 506. In a February 29, 2012, doctor's certificate for state disability, Dr. Lin diagnosed Risco with "low back pain due to lumbar disc disease and stenosis." AR 524. At that time, Risco's treatment consisted of pain control and physical therapy. AR 524. Dr. Lin stated Risco's disability began in July 2011, and could be expected to continue until August 1, 2012. AR 524.

In the decision, the ALJ explained he gave Dr. Lin's letter little weight, as he found it too "vague" and inconsistent with "sparse radiological findings and limited physical examination findings." AR 47. The ALJ specifically pointed out that in recent treatment notes, dated January 10, 2012, Dr. Lin noted Risco's back pain as "stable," better with physical therapy, and controlled with Vicodin and Flexeril. AR 47, 495. This led the ALJ to find the treatment notes more persuasive. AR 47. The ALJ also found Dr. Lin's state disability certificate too vague, and faulted its conclusion for not explaining its basis and not specifying any functional limitations. AR 47.

As stated above, an ALJ need not accept a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. In addition, where, as here, a treating physician's opinion is controverted by the opinions of other physicians, the opinion of a treating physician may only be rejected for "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. Dr. Lin's two sentence letter and disability doctor's certificate are both brief and conclusory, and as the ALJ noted, vague. *Id*. Thus, the Court considers whether Dr. Lin's opinion was "inadequately supported by clinical findings." *Id*.

On June 7, 2011, Dr. Lin discussed Risco's back pain as having a severity level of 8, and the problem as "fluctuating" and occasional. AR 466. Upon examination, Dr. Lin noted tenderness in Risco's spine. AR 467. Dr. Lin again saw Risco on July 1, 2011, and at the meeting, Risco rated his pain as "9/10," though the source of this pain was not

Case No.15-cv-03075 NC              10

identified in the treatment notes. AR 465. Later in 2011, an MRI noting "disc space narrowing and anterior and posterior spurring" was performed, which Dr. Lin was aware of. AR 495. At the January 10, 2012, doctor's visit that the ALJ took issue with, Dr. Lin noted the results of the MRI, that Risco was better with physical therapy, and that his condition was controlled with medication. AR 495. On that day, Dr. Lin noted "posterior tenderness" in his spine, and Risco rated his pain as 9/10. AR 496-97.

Here, the Court finds the ALJ erred in giving little weight to Dr. Lin's opinions. Throughout the doctor-patient relationship, Dr. Lin noted Risco's back pain, and when she wrote the letter and doctor's certificate, she knew the MRI results. *See* AR 495. Indeed, in the January 10, 2012, doctor's visit the ALJ found inconsistent with Dr. Lin's opinion, Dr. Lin found back pain, which undermines the ALJ's use of those treatment notes to discredit her opinions. *See* AR 47. However, even assuming some improvement in early 2012, "[o]ccasional symptom-free periods… are not inconsistent with disability." *Lester*, 81 F.3d at 833. Also, though Dr. Lin's medical opinions may have been brief and conclusory, the Court is not convinced they were "inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Thus, the Court finds the ALJ failed to give "specific and legitimate reasons" supported by substantial evidence in the record for rejecting Dr. Lin's medical opinions. *Lester*, 81 F.3d at 830-31.

### 3. The ALJ Properly Rejected The Opinion Of Examining Physician Calvin Pon.

Dr. Pon conducted a consultative examination of Risco on August 17, 2010. AR 47, 391. During that examination, Risco was unable to squat all the way because of knee pain, and complained of some lower back pain and left shoulder pain upon palpation. AR 392-93. After the exam, Dr. Pon concluded Risco could perform "light work with additional postural and reaching limitations." AR 47, 393. The ALJ rejected Dr. Pon's opinion because it was "completely unsupported by the diagnostic and radiological findings." AR 47. Specifically, the ALJ took issue with a number of the "possible" diagnoses Dr. Pon gave that were based on Risco's subjective complaints, "as there is

Case No.15-cv-03075 NC            11

virtually no history of neck or left shoulder pain." AR 47. Also, the ALJ rejected Dr. Pon's finding of a "possible" knee condition, since the ALJ evaluated the medical evidence regarding Risco's knee pain, and concluded such symptoms caused no additional limitations. AR 46-47. Risco argues the ALJ erred in rejecting Dr. Pon's opinion because the doctor's findings were based on his examination of Risco, which revealed hypertrophy of the right knee joint and tenderness at the anterior aspect. Dkt. No. 25-2 at 17. Furthermore, Risco argues that subsequent findings are consistent with Dr. Pon's. *Id*.

As an examining physician whose opinion was contradicted by the opinions of Drs. Lin, Ocrant, and Wong, Dr. Pon's opinion may only be rejected for "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. The Court is not, however, persuaded by Risco's argument that subsequent findings are consistent with Dr. Pon's opinion. Dkt. No. 25-2 at 17-18. The Court will only consider Dr. Pon's opinion with reference to the reasoning he used and the knowledge he had when he conducted Risco's evaluation. Furthermore, the ALJ provided his reasoning for finding Risco had no knee condition. AR 46. The ALJ found Dr. Pon's opinion unpersuasive because the opinion relied on Risco's subjective complaints and not on any medical records, and the limitations he found were based on those complaints. AR 47. The ALJ noted that the record contained "virtually no history of neck or left shoulder pain," which undermined Dr. Pon's opinion that such complaints could form the basis of work limitations. AR 47. Accordingly, the ALJ gave both "specific and legitimate reasons" for rejecting Dr. Pon's opinion. *Lester*, 81 F.3d at 830-31. The Court finds the ALJ did not err by giving little weight to the opinion of Dr. Pon.

### 4. The ALJ Properly Gave Great Weight to the Opinions Of Agency Doctors Ocrant and Wong.

The ALJ accorded the greatest weight to Agency physicians Ocrant and Wong. AR 47. In September 2010, Dr. Ocrant found Risco's symptoms non-severe, and that he could perform light work. AR 47-48, 433. On January 5, 2011, Dr. Wong found Risco's hearing and physical condition non-severe. AR 438. The ALJ noted the doctors' findings, and

Case No.15-cv-03075 NC                12

based his opinion that Risco could perform medium work on the 2011 MRI, which was conducted after the Agency doctors' reviews. AR 48. Risco argues the ALJ erred in giving the Agency doctors' opinions the greatest weight because "a great deal of evidence [was] submitted after the State Agency opinions," such as a 2011 x-ray and 2012 MRI taken of Risco's lumbar spine, and a 2013 x-ray of Risco's knee. Dkt. No. 25-2 at 13. As a result, Risco argues, their opinions should not be given great weight, as they were not familiar with the information in the case record between 2011 to 2013. *Id*. at 13-14.

As noted above, an ALJ may not justify the rejection of the opinion of an examining or treating physician using solely the opinion of a non-examining physician. *Morgan*, 169 F.3d at 602. However, an ALJ may rely in part on non-examining physicians' statements to the extent independent evidence supports them. *Id*. In addition, a non-examining physician's opinion may constitute substantial evidence if it is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Here, to support "the greatest weight" given to the Agency physicians' opinions, the ALJ stated he "considered the additional documents submitted since the DDS analysis and the findings of degenerative changes particularly at the L5-L6 level noted on [the] MRI." AR 47-48. The ALJ concluded that the MRI and physicians' opinions supported a medium RFC. AR 48. The Court notes the ALJ did not solely rely on the opinions of the non-examining physicians; he also relied on the MRI results to conclude that Risco could perform medium work. According to the ALJ's evaluation of those records, since the 2011 MRI, no additional objective or radiological findings support a conclusion that Risco's back condition worsened. AR 45. The ALJ does not appear to have relied on Drs. Ocrant and Wong's opinions to discredit the opinions of Drs. Lin and Pon. Drs. Ocrant and Wong never saw the MRI or any of the subsequent medical evidence. The ALJ instead used the opinions of Drs. Ocrant and Wong to strengthen his interpretation of the subsequent medical evidence to find Risco could perform medium work. Thus, though the Agency physicians' opinions were older, the ALJ relied on them to *support* the RFC finding, which was also based on independent medical evidence. *Morgan*, 169 F.3d at 602.

Though the ALJ did not err in giving little weight to the opinions nurse practitioner Jolly and Dr. Pon and according the greatest weight to Drs. Ocrant and Wong, he did err in rejecting the opinions of Dr. Lin.  Even though substantial evidence supported giving the Agency physicians' opinions the greatest weight based on the ALJ's analysis, the failure to properly evaluate the opinion of treating physician Lin was not harmless error.  This is because, as a treating physician, Dr. Lin's opinion of Risco's condition would be entitled to the greatest, if not controlling weight.  *Lester*, 81 F.3d at 830; 20 C.F.R. § 1527(c)(2).

### C.   The ALJ Properly Found Risco Less Than Fully Credible.

Risco also contends the ALJ erred in not finding him fully credible.  Dkt. No. 25-2 at 25.  Colvin argues the ALJ made an appropriately specific credibility finding supported by the record.  Dkt. No. 27 at 7.

An ALJ must use a two-step analysis to determine a claimant's credibility as to subjective pain or symptoms.  *Garrison*, 759 F.3d at 1014.  An ALJ first decides if the claimant presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations omitted).  If the claimant meets the first test, and the ALJ finds no malingering, the claimant's testimony regarding the severity of symptoms may only be rejected for "specific, clear and convincing reasons."  *Id*.  Where a credibility determination is a "critical factor" in the ALJ's decision, the ALJ must make an "explicit credibility finding" that is "supported by a specific, cogent reason for the disbelief."  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  If a reviewing court agrees that the ALJ's finding is so supported, it must be given great weight.  *Id*.  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which he complains."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found Risco "credible with respect to his conditions but far less so

Case No.15-cv-03075 NC           14

when describing their severity." AR 46. The ALJ noted that at the hearing Risco testified to "extremely severe symptoms," like an inability to sit for more than 15 minutes at a time or bend down to tie his shoelaces. AR 46. In finding Risco less than fully credible, the ALJ discussed that Risco had been in a biking accident. AR 46. The ALJ noted that riding a bike would presumably not be something Risco could do if his pain symptoms were as severe as claimed. AR 46. Moreover, upon examination after that accident, Risco claimed no back pain had a full range of motion. AR 46. The ALJ also found "considerable gaps" in treatment and unremarkable back pain findings by his medical providers. AR 45-46. Lastly, regarding the claim that Risco's medications caused his kidney damage, the ALJ found Risco's testimony on this issue not credible because no evidence existed that the medications had caused the condition. AR 46. In weighing Risco's testimony, the ALJ was allowed to consider inconsistencies between his testimony and his conduct. *Light*, 119 F.3d at 792. Here, the ALJ did not dispute that Risco's symptoms existed. Instead, the ALJ found that based on a comparison of Risco's conduct and claims regarding his symptoms, the claims as to the severity of his pain were less credible. AR 46. The ALJ's reasoned explanation for finding Risco's pain testimony less than fully credible is supported by "a specific, cogent reason for the disbelief." *Rashad*, 903 F.2d at 1231. Accordingly, the Court finds no error in the ALJ's credibility finding.

### D. The ALJ Improperly Disregarded Risco's Back Pain, Properly Considered Risco's Knee Pain, And Failed To Properly Consider Side Effects Allegedly Caused By Medication.

Risco also alleges the SSA has not shown he can perform medium work when taking into account his severe and non-severe exertional and non-exertional impairments. Dkt. No. 25-2 at 20. Specifically, Risco contends that the ALJ failed to consider the pain his back and knee conditions caused him, as well as the side effects of his medication. *Id*. at 21-23. Colvin contends this argument lacks merit because it is based on Risco's earlier credibility argument, and no evidence supported Risco's alleged side effects testimony. Dkt. No. 27 at 9-10.

At step five, the SSA has the burden to demonstrate other jobs exist in significant

Case No.15-cv-03075 NC    15

numbers in the national economy that the claimant could perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). A claimant must be able to perform the full range of jobs within a given category of work (e.g., light work, medium work), and exertional and non-exertional impairments must be considered. *Id*. at 1102. An exertional limitation is an impairment that affects a claimant's ability to meet work strength demands. 20 C.F.R. § 404.1569a(a). A "non-exertional impairment" is an impairment that limits the claimant's ability to work "without directly affecting his or her strength." *Desrosiers v. Sec. of Health and Human Servs.*, 846 F.2d 573, 579 (9th Cir. 1988) (Pregerson, J., concurring) (internal citations omitted); *see* 20 C.F.R. § 404.1569a(c).

In analyzing symptoms related to a medical impairment, the SSA's regulations direct an ALJ to consider "[t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010). If an ALJ disregards a claimant's testimony regarding the "subjective limitations of side effects," the ALJ must support the decision with specific findings justifying that decision. *Varney v. Sec'y of Health & Human Servs.*, 846 F.2d 581, 585 (9th Cir. 1988) (remanding where no such findings were made) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)). In addition, an ALJ must consider objective and other evidence of pain, as well as a claimant's complaints of pain when determining their RFC. SSR 96-8p; *Shafer v. Barnhart*, 120 F. App'x 688, 698 (9th Cir. 2005).

As discussed in Part III(C), the ALJ found Risco credible as to the existence of his conditions and symptoms of pain, "but far less so when describing their severity." AR 46. The ALJ studied the medical evidence of Risco's back condition in determining his RFC and credibility, but found his statements exaggerated given that "no additional objective or radiological findings" supported his reported worsening symptoms, and that no additional limitations resulted from such pain. AR 44-46. Given the ALJ's erroneous discrediting of Dr. Lin's medical opinions, however, it is unclear whether or not the ALJ's determination of Risco's back pain was supported by substantial evidence, since he did not properly

Case No.15-cv-03075 NC                 16

consider all of the relevant evidence of back pain. *See* SSR 96-8p ("the RFC assessment must: [c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms"). Indeed, it is likely that had the ALJ given more credit to Dr. Lin's opinions, Risco's allegations of back pain would have led the ALJ to find work limitations. Accordingly, the Court cannot find that the ALJ's failure to comply with the requirements of SSR 96-8p was harmless error. *Burch*, 400 F.3d at 679. Nonetheless, the ALJ did properly find that Risco's alleged knee pain supported no further limitation, since the ALJ's decision did significantly engage the relevant medical records on that condition. AR 46.

As to Risco's argument that the ALJ failed to consider the side effects of his medication or treatment modalities, the Court finds merit in this argument. In remanding Risco's case to the ALJ after the first hearing, the Appeals Council found that the ALJ's decision did not "adequately consider [his] subjective complaints," including his responses "to prescribed medications and other treatment modalities." AR 155. Furthermore, the Appeals Council directed the ALJ to "[f]urther evaluate the claimant's subjective complaints, specifically related to response[s] to prescribed medications and other treatment modalities." AR 155. At the hearing, the ALJ questioned Risco about his side-effects, and Risco reported his medications sometimes made him dizzy or sleepy. AR 124. Risco also testified that he believed his medications damaged his kidneys, but the ALJ found that "at no point did the doctor suggest that [the kidney damage] was related to his medication use." AR 46, 124. While the Court finds no error in the ALJ's discrediting of Risco's testimony as to his kidney damage, the Court does find error in the ALJ's failure to even consider the side effects of dizziness or sleepiness in the decision. *Varney*, 846 F.2d at 585. This failure to even consider Risco's claims regarding these symptoms also flies in the face of the Appeals Council's directive.

Accordingly, though the Court finds the ALJ did not err in not considering Risco's claims of knee pain, the Court does find the ALJ erred in discrediting Risco's claimed back pain, and not discussing the side effects of Risco's medication at all.

Case No.15-cv-03075 NC                17

### E. Though The ALJ Properly Considered Risco's Obesity, The ALJ Improperly Failed To Consider Risco's Vision and Hearing Loss At Step Five, Which Made Application Of The Grids Inappropriate.

Lastly, Risco argues the ALJ erred in "mechanically applying" the grids to his case because Risco cannot perform the full range of medium work, and has significant non-exertional impairments. Dkt. No. 25-2 at 23. Colvin argues this contention lacks merit because the record lacks evidence as to how the non-exertional limitations of obesity, hearing loss, and vision loss would limit him. Dkt. No. 27 at 10.

At step five, the SSA must demonstrate other jobs exist in significant numbers in the national economy that the claimant could perform. *Tackett*, 180 F.3d at 1099. The ALJ can meet this burden in one of two ways: (1) through the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines ("the grids"), at 20 C.F.R. pt. 404, subpt. P, app. 2. *Id*. The grids are "a matrix system for handling claims that involve substantially uniform levels of impairment." *Id*. at 1101 (citing 20 C.F.R. pt. 404, subpt. P, app 2). A claimant must be able to perform the full range of jobs within a given grids category (e.g., sedentary work, light work). *Id*. at 1102. Significant non-exertional impairments may make reliance on the grids inappropriate. *Desrosiers*, 846 F.2d at 577.

Non-exertional impairments limit a claimant's ability to work "without directly affecting his or her strength." *Id*. at 579 (Pregerson, J., concurring) (internal citations omitted). A sufficiently severe non-exertional impairment "may limit the claimant's functional capacity in ways not contemplated by the guidelines," which makes the grids inapplicable. *Id*. at 577. In addition, an ALJ should consider all impairments, severe and non-severe at step five. 20 C.F.R. § 404.1523; SSR 96-8p. Because the grids are based on strength factors only, an ALJ generally may not solely rely on them where a claimant suffers from non-exertional limitations. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (finding the grids "sufficient only when a claimant suffers only from exertional limitations") (citing 20 C.F.R. Pt. 404, subpt. P, app. 2 §§ 200.00(b), (e)). Yet the Ninth Circuit held that a claimant's mere allegation of a non-exertional limitation "does not automatically preclude application of the grids." *Desrosiers*, 846 F.2d at 577.

As to Risco's vision loss, the ALJ noted that even though Risco injured his eye in the 1980s, he passed an eye examination to drive. AR 43. The ALJ found there have been "no recent acute changes in vision," and that a 2006 eye injury did not result in significant limitations. AR 43. Though the ALJ found Risco's vision loss did not result in significant limitations, and was thus non-severe, the ALJ failed to consider vision loss as a non-exertional limitation at step five. In addition, the ALJ failed to consider Risco's hearing loss entirely except for a cursory reference stating: "it appears that the claimant has hearing loss and wears hearing aids" at step two. AR 42. The ALJ made no reference to hearing loss as a non-exertional limitation at step five. Evidence of vision loss exists in the record, and Risco testified regarding his vision. AR 129-30, 334, 343. Testimony and evidence of hearing loss also exist in the record. AR 110, 332, 355-56, 359, 433. Even though the ALJ found Risco's vision and hearing loss non-severe at step two, the ALJ was still required to discuss these impairments at step five. *See* 20 C.F.R. § 404.1523; SSR 96-8; *Schneider v. Colvin,* No. 5:14-CV-03593-PSG, 2015 WL 2251004, at *4 (N.D. Cal. May 13, 2015). SSR 96-8 points out that when combined "with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." Given the evidence of non-exertional limitations, the Court is not persuaded that the ALJ's direct application of the grids at step five was appropriate. *Burch*, 400 F.3d at 679; *Desrosiers*, 846 F.2d at 577.

As to Risco's obesity, the ALJ followed the mandate of SSR 02-1p, which provides that when the ALJ identifies "obesity as a medically determinable impairment…., [the ALJ] will consider any functional limitations resulting from the obesity in the RFC assessment." In this case, the ALJ specifically stated:

> Obesity may have an adverse impact upon co-existing impairments. For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart. Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone. In addition, obesity

Case No.15-cv-03075 NC              19

> may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. These considerations have been taken into account in reaching the conclusions herein at the 2nd through 5th steps of the sequential disability evaluation process, *even though no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant'[s] obesity.*

AR 43 (emphasis added). The Court's review of the record confirms the ALJ's conclusion that no medical evidence supported any additional limitations caused by obesity, as does Risco's failure to present any medical evidence supporting any additional limitations caused by his obesity. *See* Dkt. No. 25. The ALJ's decision actually shows that he considered Risco's obesity as causing possible work limitations *even though* there was no medical evidence that supported any additional limitations caused by obesity. Furthermore, Risco was represented by counsel at both of his hearings before the ALJ. Where, as here, the claimant fails to allege how obesity affected his other impairments, and the claimant is represented, "the ALJ's duty to independently develop the record is less than it would be where claimant is proceeding pro se." *Kerl v. Astrue*, No. 11-CV-00330 HRL, 2012 WL 900899, at *3 (N.D. Cal. Mar. 15, 2012) (citing *Burch*, 400 F.3d at 682). The Court finds no error in the ALJ's consideration of obesity.

## IV.   CONCLUSION

The Court finds that as to the weight given to Dr. Lin's opinion, the lack of consideration given to the side effects of Risco's medication and back pain in formulating his RFC, and the failure to take into account Risco's non-exertional non-severe impairments, the ALJ's opinion is not supported by substantial evidence in the record or constitutes legal error. Thus, the Court GRANTS in part Risco's motion for summary judgment and DENIES in part the Commissioner's cross-motion for summary judgment and REMANDS this case for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated:  October 6, 2016                                      _____
                                                              NATHANAEL M. COUSINS
                                                              United States Magistrate Judge